# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Cr. No. 06-280 (ESH) |
| **MEHRZAD ARBANE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS INDICTMENT

The United States of America, through its undersigned counsel, hereby opposes

Defendant's motion to dismiss his indictment.  Defendant Mehrzad Arbane ("Arbane") is

charged with one conspiracy count and one substantive count of manufacturing or distributing

cocaine outside the United States, knowing or intending that the cocaine would be unlawfully

imported into the United States, in violation of 21 U.S.C. §§ 959, 960(b)(1)(B)(ii), 960(b)(1)G),

963, and 18 U.S.C. §§ 2 and 3551.  Arbane argues that the indictment on these charges violates

the Double Jeopardy clause, as his conviction for conspiring to violate 21 U.S.C. § 952 for the

same activity was overturned by the Eleventh Circuit Court of Appeals.  *See United States v.*

*Arbane*, 446 F.3d 1223 (11th Cir. 2006).

The current indictment does not violate the Double Jeopardy Clause.  Simply put, in the

instant case Arbane is charged with a broader, continual conspiracy than that litigated in the

Eleventh Circuit, which focused on a conspiracy to import drugs into the United States from

October 2001 through January 8, 2002, in violation of 21 U.S.C. § 952, with a confidential

informant.  In contrast, in this district, Arbane is charged with a conspiracy, with a drug trafficker

1

named "the Engineer," to manufacture or distribute drugs outside the United States, knowing or intending that they are destined for the United States, in violation of 21 U.S.C. § 959.  As the Eleventh Circuit expressly held in its opinion, the conspiracy with the Engineer, which started in October 1999, "occurred prior to the period of conspiracy alleged in the [first] indictment." *Arbane*, 446 F.3d at 1231 n.13; *see also id.* at 1226-27, n. 4 ("The evidence of a prior conspiracy * * * to import drugs into the United States with the assistance of the Engineer *** predated the period of the illegal activity alleged in the indictment").  Moreover, the two conspiracies involved different unlawful objects and require proof of different elements.  Thus, regardless of whether this Court applies the traditional double jeopardy test under *Blockburger v. United States*, 284 U.S. 299 (1932), or the five-factor analysis offered by Arbane, the instant indictment does not place Arbane in double jeopardy.

Nor does collateral estoppel preclude the Government from prosecuting Arbane for his violation of 21 U.S.C. §§ 959 and 963.  In the Eleventh Circuit case, the court concluded that Arbane did not conspire to violate 21 U.S.C. § 952 because, during the time-frame of the charged conspiracy, the only possible co-conspirator was the Government's confidential informant.  The Eleventh Circuit did not decide an "ultimate issue" in this case and therefore the Government is not estopped from prosecuting Arbane for his conspiracy with the Engineer.  *Ashe v. Swenson*, 397 U.S. 436, 443, *rehearing denied* 505 U.S. 1239 (1970).

Arbane's claim of prosecutorial vindictiveness is likewise without merit.  The prosecutorial vindictiveness doctrine prevents the Government from punishing a defendant for exercising a constitutional right in the course of a criminal proceeding by increasing the level of his offense in a new trial.  *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002).  It does not

2

prevent the Government from prosecuting a separate offense – here, the underlying substantive

violation of 21 U.S.C. § 959. Indeed, Arbane's motion to dismiss the entire indictment must fail

precisely because the Government has charged, for the first time, the substantive § 959 violation.

It is beyond dispute that a conspiracy and an underlying crime are separate offenses that can be

prosecuted successively without violating the Double Jeopardy Clause. *United States v. Felix*,

503 U.S. 378, 389-90 (1992). Accordingly, dismissal of the entire indictment is not the

appropriate remedy.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In early 1999, Jairo Velez ("Velez") met Arbane; they met again in Mexico City at

Arbane's request. 2005 WL 4815007 (Government's appellate brief). The two men discussed

doing business together, and in 1999 they shipped three loads of cocaine by air from Ecuador to

Mexico. *Id.* From the first shipment, Velez sold 50 kilograms of cocaine to Jose Luis Jiminez

(a.k.a. "the Engineer"), of which 10 kilograms were transported to New York City. The second

and third shipments followed the same pattern: for each shipment, Arbane sold 50 kilograms of

cocaine to the Engineer, 10 kilograms of which were transported to New York City.

The business arrangement continued, but the terms of the operation changed in March,

2000, when each of the three participants (Arbane, Velez, and the Engineer) started taking one

third share; Arbane and Velez paid for transportation of the drugs to Mexico, and the Engineer

continued transporting and distributing Arbane's drugs in New York City. *Id.* In April 2000,

using a small airplane, the Engineer transported 15 kilograms of Arbane's cocaine from Mexico

to New York City. In June 2000, the Engineer provided a vacuum machine to allow Arbane and

Velez to package the cocaine more tightly, thereby fitting more drugs into the airplane. Velez

3

instructed Arbane on how to use the vacuum machine.  In the next shipment, at the end of the summer in 2000, Arbane shipped 180 kilograms to the Engineer, who transported 10 kilograms to New York City.  A third shipment in 2000 followed the same pattern, with Arbane selling 180 kilograms of cocaine to the Engineer, 10 of which the Engineer transported to New York City.

Shipments to the United States were suspended on January 2001, when Arbane fled from Ecuador to Venezuela.  However, Velez and Arbane continued to discuss ways to ship the cocaine from Ecuador to the United States.   In June 2001, the Engineer was arrested in New York City.  Subsequently, on November 19, 2001, Velez began cooperating with law enforcement,[1] and shipments were to resumed in January 2002.  Velez recorded at least two conversations with Arbane concerning the storage and movement of the cocaine from Ecuador to the United States.  Before the drugs were transported, however, Arbane was arrested by the Ecuadorian authorities on January 8, 2002 in Ecuador.

On September 18, 2003, Arbane was indicted in the Southern District of Florida on one count of conspiracy to import five kilograms or more of cocaine into the United States, from October 2001 through January 8, 2002, in violation of 21 U.S.C. § 952.  *Arbane*, 446 F.3d at 1225.  Arbane was convicted and sentenced to 235 months imprisonment.  *Ibid.*  On appeal, the Eleventh Circuit reversed.  The court reasoned that, given the Engineer's arrest in June 2001, the only person Arbane could have conspired with during the charged time-frame was Velez; because Velez was working for the Government during that time, he could not be a co-conspirator.  *Id.* at 1226-1230.

---

[1] Although Velez was arrested in October 2001, he did not begin cooperating with law enforcement until November 19, 2001.

On September 21, 2006, Arbane was indicted in this district on: (1) one count of conspiracy to manufacture and distribute five kilograms or more of cocaine, knowing or intending the drugs were destined for the United States in violation of 21 U.S.C. §§ 963 and 959; and (2) one substantive count of manufacturing or distributing five kilograms or more of cocaine, knowing or intending the drugs were destined for the United States, in violation of 21 U.S.C. § 959.  The indictment also includes a forfeiture request under 21 U.S.C. § 853.

**ARGUMENT**

I.    The Instant Indictment Charges One Continual Conspiracy from September 1999 to January 8, 2002

The defendant misconstrues the government's case against him.  The instant indictment dates from September 1999 to the arrest of the defendant in Ecuador on January 8, 2002.  As the United States Court of Apeals for the Eleventh Circuit correctly noted, the evidence supports a conspiracy with the Engineer to import cocaine into the United States from September 1999 to the arrest of  the Engineer in June 2001 – a time period *outside* the indictment from the Florida prosecution.  *Arbane*, 446 F.3d at 1231 n.13; *see also id.* at 1226-27, n. 4 ("The evidence of a prior conspiracy * * * to import drugs into the United States with the assistance of the Engineer *** predated the period of the illegal activity alleged in the indictment").[2]  The arrest of the Engineer may have terminated *his* participation in the conspiracy but his arrest did not terminate the conspiracy. *See United States v. Whitehorn,* 710 F. Supp. 803 (D.D.C.) *rev'd on other*

---

[2] Velez was not a government informant until November 19, 2001, months after the arrest of the Engineer in June 2001.  Thus, the conspiracy to import cocaine into the United  States during this time period  included, at a minimum, the Engineer, Velez and the defendant.  There were, of course, others in the distribution chain that conspired  to smuggle the drugs to the United States. *See*, *United States v. Tarantino,* 846 F.2d 1384, 1392 (D.C. Cir.) *cert. denied* 488 U.S. 840 (1988)(a "chain" conspiracy raises the inference that each conspirator has agreed with the others, known and unknown, to further a common unlawful objective – the distribution of illegal drugs for profit).

grounds *United States v. Rosenberg,* 888 F.2d 1406 (1989)(Neither the defendant's participant

nor the conspiracy terminated with the arrest of the defendant); *United States v. Mealy,* 851 F.2d

890, 901 (7th Cir. 1988)(arrest of a co-conspirator does not automatically terminate the

conspiracy since the remaining conspirators may continue to carry out the goals of the

conspiracy); *United States v. Goff,* 847 F.2d 149, 170 (5th Cir.) *cert. denied in Kuntze v. United

States,* 488 U.S. 932 (1988)("[E]ven when several members of a conspiracy are arrested, the

conspiracy itself is not necessarily terminated").

Rather, a conspiracy terminates "after the central criminal purposes" of the conspiracy

"have been attained," *Grunewald v. United States,* 353 U.S. 391, 401-402 (1957), or when the

"ends [of the conspiracy have] been so frustrated or its means so impaired that its continuation

was no longer plausible." *United States v. Gibbs*, 739 F.2d 838, 845 n.18 (3rd Cir. 1984).

Moreover, this is a factual determination that is an issue for the jury. *United States v. Cisneros,*

26 F.Supp.2d 24, 55 (D.D.C. 1998). In the instant case, the purpose of the conspiracy was to

smuggle multiple kilograms of cocaine from Ecuador with the ultimate destination the United

States. Although the Engineer provided the means of transportation for the conspiracy, the

purpose of the conspiracy was not attained upon the arrest of the Engineer. *See, United States v.

Goff, supra,* 847 F.2d at 170 ("[D]rug conspiracies involving multiple importation episodes may

continue for many months"). Indeed, before and after the arrest of the Engineer the defendant

and Velez were seeking alternative means to smuggle the kilograms of cocaine stored in the

defendant's Ecuadorian apartment into the United States.[3] Even after the Engineer was arrested

---

[3] Before the arrest of the Engineer, the two spoke about using shipping containers with false compartments
to smuggle the drugs into Miami. *See,* Trial Transcript, page 243, line 2. After the arrest, on two recorded
conversations in December 2001, Velez and the defendant continued to discuss the movement of the drugs from

and Velez was cooperating, the conspiracy to smuggle the cocaine into the United States

survived. *United States v. Haddad*, 976 F.2d 1088 (7th Cir. 1992)(even though two of three

defendants were arrested, as long as one conspirator remained at large, the conspiracy was alive);

*see also, United States v. Jimenez Recio,* 537 U.S. 270 (2003)(government seizure of drugs –

defeating the object of the drug conspiracy – did not necessarily and automatically terminate the

conspiracy).[4]

The defendant should not escape liability now because of the fortuitous arrest of the

Engineer. *See United States v. Richardson,* 167 F.3d 621, 626 (D.C. Cir.) *cert. denied* 528 U.S.

895 (1999)("The 'fortuitous interruption of [racketeering] activity such as by arrest' does not

grant defendants a free pass to evade RICO charges").

II.    The Instant Indictment Charges a New Crime that Congress Intended to Punish
       Separately from 21 U.S.C. § 952

       A.    The Indictment Satisfies the *Blockburger* Test

The Double Jeopardy Clause provides a defendant three basic protections: "It protects

against a second prosecution for the same offense after acquittal.  It protects against a second

---

Ecuador to the United States.  For example, in a recorded conversation of a meeting that took place between Arbane and Velez on December 23, 2001, in Miami, Arbane tells Velez " I want to take out that shit we have over there, that we have in Ecuador…." Velez replies that he has someone that can take it out and both continue to talk about the price of the cocaine in Miami. Velez suggests that he has a friend that can bring it and Arbane replies "forget about that because I rather use (UI) my guys." When Velez asks him when are they going to do it, Arbane replies " …am available to do it on January 15th". (Transcript of Tape Recording on December 23, 2001, Exhibit 20, pages 52-54). Later in the conversation Arbane asks Velez to travel to Ecuador ". . . so you can see everything's three and that no money's (UI), it's there in shit, right? . . . that so much stuff is there."  And later Arbane tells Velez that he " … want(s) to take that out fast". (Id. at pages 69-70) Contrary to the defendant's claim, while the defendant did not want to travel to the United States, he continued to discuss the illegal importation of the cocaine stored in Ecuador into the United States.

    [4] Since the defendant sought to attain the goals of the conspiracy by continuing to discuss the movement of the cocaine stored in Ecuador into the United States until his arrest on January 8, 2002,  the statute of limitations does not bar this action.  In addition, since Velez did not become a government informant until November 19, 2001, the District of Columbia indictment on September 21, 2006, is not barred by the statute of limitations.

prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *see also United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir.) *cert. denied* 526 U.S. 1079 (1999). Regardless of which type of violation is alleged, the analysis is "essentially a question of statutory construction," albeit one "with constitutional implications." *McLaughlin*, 164 F.3d at 7-8. The Supreme Court's test for determining whether an indictment violates double jeopardy is found in *Blockburger v. United States*, 284 U.S. 299 (1932).

The *Blockburger* test requires a comparison of the elements of the offenses to determine whether "each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. If the answer is affirmative, then Congress intended one activity to be punished under more than one criminal statute. In this case, it is clear that § 952 and § 959 not only require the proof of different elements, but that Congress expressly intended § 959 to focus on a specific aspect of international drug trafficking. Accordingly, under the traditional *Blockburger* test, the instant indictment does not violate the Double Jeopardy Clause.

Section 959, charged in the instant indictment both as a substantive offense and an object of a conspiracy count, "is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States." 21 U.S.C. § 959(c).[5] To establish a substantive violation of § 959, the Government must prove that: (1) a Schedule I or Schedule II controlled substance was manufactured or distributed overseas; and (2) the defendant knew or intended it

---

[5] Section 959 is a corollary to the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501-70507 (formerly 46 U.S.C. App. §§ 1901-1904) which criminalizes the extraterritorial distribution of controlled substances on the high seas. In passing these statutes, Congress sought to prosecute drug traffickers and disrupt drug organizations operating *outside* the United States.

was destined for the United States or its territorial waters.  21 U.S.C. § 959.  To establish a

conspiracy to violate § 959, the Government must prove that two or more people entered into an

agreement to manufacture or distribute a Schedule I or Schedule II controlled substance, knowing

or intending that it was destined for the United States or its territorial waters.

   In contrast, § 952 criminalizes the import of Schedule I and Schedule II controlled

substances, narcotic drugs in Schedules III-V, and certain listed chemicals into the United States

without the appropriate approval of the Attorney General or his delegates.  21 U.S.C. § 952.

While § 952 can certainly include drug traffickers operating overseas, that is not its sole or

primary function.  Rather, by its clear terms, § 952 casts a much wider net to include drug

traffickers and legitimate industry operating solely within the United States in a wider variety of

controlled substances and listed chemicals.  Thus, under the *Blockburger* test, § 952 and § 959

are different crimes with different elements.

   B.    The Indictment Satisfies Arbane's Five-Factor Test

   Arbane argues that *Blockburger* is not the governing test because this case involves a

successive conspiracy prosecution; rather, he offers a five-part test adopted by the Fourth and

Ninth Circuits. Mot. at 9 (relying on *United States v. Alvarado*, 440 F.3d 191, 198 (4th Cir.

2006); *United States v. Smith*, 424 F.3d 992, 1000 (9th Cir. 2005)).[6]  Neither the Supreme Court

nor the Circuit Court for the District of Columbia has expressly endorsed a separate test for

---

[6] In *United States v. Liotard*, 817 F.2d 1074, the Third Circuit declined to adopt the fifth factor in the
majority analysis.  In so doing, the court held that "[f]or purposes of determining the parameters of the two alleged
conspiracies, these differences in statutory violation are immaterial and fortuitous."  *United States v. Liotard*, 817
F.2d 1074, 1078 (3d Cir. 1987). The Third Circuit concluded that this was inconsistent with *Braverman v. United
States*, 317 U.S. 49, 53 (1942) ("The one agreement cannot be taken to be several agreements and hence several
conspiracies because it envisages the violation fo several statutes rather than one.").

successive conspiracy prosecutions.[7]  Even if this Court were to apply the five-factor test or one

of its variants, however, the instant indictment does not place Arbane in double jeopardy.  Unlike

the original indictment, the instant conspiracy covers the conspiratorial agreement, commencing

with Arbane and the Engineer in 1999, and continuing until Arbane was arrested in January

2002, to commit an extraterritorial crime.

      1.     <u>Time Periods Covered by the Conspiracies</u>.  The instant conspiracy commenced in

1999, when Arbane, Velez and the Engineer first entered into a business agreement to distribute

drugs in Central and South America, knowing and intending that some of these drugs were

destined for the United States.  The conspiracy ended on January 8, 2002, when Arbane was

arrested.  In contrast, the prior indictment charged a conspiracy from October 1, 2001 until

January 8, 2002.  Thus, it is clear that the time frame for the two charged conspiracies are

different.

      2.     <u>The Places Where the Conspiracies Occurred</u>.  For both conspiracies, much of the

activity occurred in Ecuador, with additional activity in Miami, Florida and Mexico.  In both

cases, the drugs were ultimately destined for New York City.

      3.     <u>The People Charged as Conspirators</u>.  In the first indictment, the Government

alleged, and the jury concluded, that Arbane conspired with Jose Lopez-Posado and Luis Catillo

Amen, Arbane's secretary.  2005 WL 4815007 at *20-21.  At oral argument, the Government

also asserted that Arbane had conspired with Rene.  *Arbane*, 446 F.3d at 1228 & n.4.  In the

---

[7] The Supreme Court has cautioned against the "ready transposition of the 'lesser included offense' principles of double jeopardy * * * to the multilayered conduct, both as to time and to place, involved in [continuing criminal enterprise (CCE) prosecutions." *Felix*, 503 U.S. at 390 (internal quotations and citations omitted).  *See also United States v. James*, 494 F.2d 1007 (D.C. Cir. 1974).  In *Felix*, however, the Court concluded that crimes could violate the "lesser included offense" principle and still withstand Constitutional muster.  Therefore, there is no clear statement by the Supreme Court that a multi-factor test should be applied in successive conspiracy prosecutions.

instant indictment, the Government alleges that Arbane conspired with the Engineer, which finds support in the Eleventh Circuit's decision (*Id.* at 1231 n.13.), and Velez before he began cooperating with law enforcement on November 19, 2001.

    4.    <u>The Overt Acts Alleged or Other Description of the Offense Indicating the Nature and Scope of the Activities Being Prosecuted</u>.  In the initial indictment, the Government focused on a series of recorded telephone conversations between Arbane and Velez.  In the instant indictment, the overt acts involve six shipments of cocaine from Ecuador, a meeting at which the Engineer showed Arbane and Velez how to vacuum pack the drugs to fit more onto the Engineer's plane and recorded conversations between Velez and Arbane after the Engineer was arrested concerning transporting the cocaine from Ecuador to the United States.[8]

    5.    <u>The Charged Substantive Statutes</u>: Although both indictments charge a conspiracy under 21 U.S.C. § 963, the charged objects are different.  As noted above, *supra*, the charged objects of the conspiracy – § 952 and § 959 – focus on different aspects of drug trafficking. Section 952 is a broad import statute that penalizes the unlawful importation of controlled substances into the United States by drug traffickers or legitimate industry that lacks the requisite licenses.  Section 959, in contrast, is expressly intended to criminalize the extraterritorial distribution of Schedule I or II controlled substances when the defendant knew or intended the drugs were destined for the United States.

    Taken together, these factors demonstrate that, in the instant indictment, the Government is charging a conspiracy between Arbane and the Engineer, which commenced in 1999 and ran

---

[8] Although this evidence was introduced pursuant to Fed. R. Evid. 404(b), it was not used as evidence to prove the existence of the conspiracy charged in the first indictment.  *Arbane*, 446 F.3d at 1226 n.4.

until Arbane was arrested in January 2002.  The central events of this conspiracy were the six

shipments of cocaine to the United States.  The change in date, co-conspirator, and charged

object is critical, as it transforms the conspiracy into a separate crime.  Accordingly, the instant

indictment does not violate double jeopardy.

II.     Collateral Estoppel Does Not Preclude the Government from Charging the Instant
        Conspiracy

        The Double Jeopardy Clause includes the principle of collateral estoppel which "means

simply that when an issue of ultimate fact has once been determined by a valid and final

judgment, that issue cannot again be litigated between the same parties in any future lawsuit."

*Ashe*, 397 U.S. at 443.  The ultimate issue here is whether Arbane conspired with the Engineer

and Velez to violate 21 U.S.C. § 959 by distributing cocaine outside the United States knowing

or intending that the drugs were destined for this country.  The Eleventh Circuit did not reach

that issue but held, instead, that Arbane could not have conspired with Velez, as a Government

agent, to import cocaine into the United States in violation of 21 U.S.C. § 952.  Accordingly,

collateral estoppel does not preclude prosecution of the larger conspiracy involving the Engineer.

III.    The Substantive Offense in the Instant Indictment Does Not Violate Double Jeopardy

        Although Arbane asks for dismissal of the entire indictment, his arguments focus solely

on the conspiracy count.  Even if he were to prevail on this argument, the appropriate remedy

would be the dismissal of the conspiracy count, not the dismissal of the entire indictment.  In the

instant indictment, for the first time, Arbane has been charged with a substantive

violation of § 959.[9]  It is beyond cavil that "the commission of the substantive offense and a

---

[9] The Southern District of Florida did not have venue to prosecute a § 959 violation.  By the specific
language of the statute, the only two places to bring a violation of § 959 is either where the defendant first enters the

12

conspiracy to commit it are separate and distinct offenses * * * [a]nd the plea of double jeopardy is no defense to a conviction for both offenses." *Pinkerton v. United States*, 328 U.S. 640, 643 *rehearing denied* 329 U.S. 818 (1946); *see Garrett v. United States* , 471 U.S. 773, 793 *rehearing denied* 473 U.S. 927 (1985) ("it does not violate the Double Jeopardy Clause * * * to prosecute [a continuing criminal enterprise] offense after a prior conviction for one of the predicate offenses:); *see also Felix*, 503 U.S. at 388*; Iannelli v. United States*, 420 U.S. 770, 777-779 (1975); *United States v. Boyle*, 482 F.2d 755, 766 (D.C. Cir.) *cert. denied* 414 U.S. 1076 (1973). Accordingly, double jeopardy does not bar prosecution of Arbane on the substantive charge of distributing cocaine knowing or intending it would be destined for the United States, in violation of 21 U.S.C. § 959.

III.    Vindictive Prosecution

Arbane argues that the Government has engaged in vindictive prosecution by bringing the instant indictment. Mot. 20-25. Arbane misapprehends the doctrine of vindictive prosecution. To begin, it is well-established that prosecutors have broad discretion in charging a defendant: "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *United States v. Armstrong*, 517 U.S. 456, 464 .Ed.2d 687 (1996) (internal citations and quotations omitted). Thus, in considering vindictive prosecution claims, courts begin with a "presumption of regularity" "that the government has properly exercised its constitutional responsibilities to

---

United States or the District of Columbia. 21 U.S.C. § 959(c). Since the defendant entered the United States in Houston, Texas, the only two appropriate venues for a § 959 charge are the Southern District of Texas or the District of Columbia. Thus, the Southern District of Florida simply could not have properly charged a violation of § 959.

13

enforce the nation's laws." *Ibid.* (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). The defendant's standard of proof to overcome this presumption "is a demanding one" that requires "clear evidence to the contrary." *Id*. at 463. Arbane fails to meet this demanding standard.

Arbane argues that there is actual vindictiveness and a presumption of vindictive prosecution because the Government has charged him with a greater crime – the substantive § 959 count. Arbane's argument fails for two reasons. First, § 959 is not a "greater crime" than the conspiracy; it is a *different* crime. *Pinkerton,* 328 U.S. at 643. The Government "ha[s] every right" to prosecute Arbane for multiple crimes. *United States v. Gary*, 291 F.3d 30 (D.C. Cir. 2002) (no vindictive prosecution when Government charged defendant for second fraudulent scheme); *United States v. Esposito*, 968 F.2d 300 (3d Cir. 1992) (adopted in *Gary*, 291 F.3d at 448) (no presumption of prosecutorial vindictiveness when Government prosecutes drug offenses that were predicate offenses to a failed RICO prosecution). Indeed, Arbane's argument would eviscerate the well-established rule that the Government can prosecute both a conspiracy and the underlying offense in successive prosecutions; under Arbane's approach, that creates a reasonable presumption of vindictive prosecution. Obviously, Arbane's logic is untenable.

Second, Arbane fails to comprehend the purpose of the prosecutorial vindictiveness doctrine, which is inapplicable here. "In the prosecutorial context, the doctrine precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution." *Gary*, 291 F.3d at 34; *see also Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir.) *cert. denied* 534 U.S. 836 (2001).

> The evil that a presumption of vindictiveness seeks to eradicate is the
> threat of retaliation when an accused exercises a right in the course of the
> prosecution. Where, however, the prosecutor has done nothing to deter the

14

> exercise of one's right during the case or proceeding, and the prosecution
> has come to a natural end, no presumption of vindictiveness applies.

*Gary*, 291 F.3d at 437 (quoting *Esposito*, 968 F.2d at 303-04). In the instant case, Arbane's

conspiracy prosecution came to a natural end in the Southern District of Florida and the Narcotic

and Dangerous Drug Section indicted him on a separate offense. Thus, this case is

distinguishable from those cases, upon which Arbane relies, in which a defendant is charged with

a greater offense *in the course of a new trial* resulting from the defendant's exercise of his

constitutional rights. *See Blackledge v. Perry*, 417 U.S. 21 (1974) (government impermissibly re-

indicted defendant for felony assault following his request for retrial on misdemeanor assault

charges); *United States v. Jamison*, 505 F.2d 407 (D.C. Cir. 1974) (following defendant's

successful motion for mistrial on second degree murder charges, government impermissibly re-

indicted him for first degree murder).[10]

Arbane also argues that the Government has violated its Petite Policy, which further

demonstrates vindictiveness. Mot. 24. As Arbane correctly notes, the Petite Policy does not

create any substantive or procedural rights. United States Attorneys' Manual 9-2.031(F). Thus,

it cannot be the basis for a finding of vindictiveness.

In any event, Arbane is incorrect in his assertion that the Government violated this policy.

The policy permits such prosecutions if three pre-requisites are satisfied: (1) the matter must

involve a substantial federal interest; (2) the prior prosecution must have left that interest

demonstrably unvindicated; and (3) the government must believe that the defendant's conduct

---

[10] Arbane also suggests that the inclusion of a forfeiture count in the instant indictment demonstrates vindictiveness. Regardless of whether a similar count was dismissed in the Florida indictment, a forfeiture count is appropriate in the instant case given the substantive offense.

constitutes a federal offense, and that the admissible evidence probably will be sufficient to

obtain and sustain a conviction by an unbiased trier of fact.  All three requirements are satisfied

for both the conspiracy and the substantive count.


**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that this Court deny the

defendant's motion to dismiss.


                              Respectfully submitted,
                              Kenneth A. Blanco, Chief
                              Narcotic and Dangerous Drug Section

                              */s/ Robert A. Spelke*
                              Robert A. Spelke
                              Trial Attorney
                              U.S. Department of Justice
                              Narcotic and Dangerous Drug Section
                              1400 New York Avenue, N.W. #800
                              Washington, D.C. 20530
                              (202) 353-3807
                              (202) 514-0483 (Fax)


CERTIFICATE OF SERVICE

I hereby certify that on the 21st  day of May, 2007, a copy of the foregoing opposition was
filed electronically with the Court, which will forward a copy to counsel for the defendant.


                              */s/ Robert A. Spelke*
                              Robert A. Spelke

16