IN THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | |
| | : | CR. NO. 06-280 (ESH) |
| MEHRZAD ARBANE, | : | |
| Defendant. | : | |

REPLY MOTION TO GOVERNMENT'S OPPOSITION
TO MOTION TO DISMISS INDICTMENT

INTRODUCTION

The government has filed an opposition to Mr. Arbane's motion to dismiss the indictment. The government's claims are without merit, and the indictment should be dismissed. Defendant is respectfully filing this reply to address the points raised in the government's opposition.

DISCUSSION

I.   **DOUBLE JEOPARDY**

The government initially argues that the indictment satisfies the double jeopardy analysis of Blockburger v. United States, 284 U.S. 299 (1932) (GO 7-9). Defendant, however, relied upon the analysis of a number of the circuits regarding successive conspiracy prosecutions. The government acknowledges the factors employed by those courts. The government states that the five-part test used in such situations has been "adopted by the Fourth and Ninth Circuits" (GO 9). In fact, a number of other circuits have also employed a similar test - - in addition to the First,

Fourth, Sixth, and Ninth Circuit cases cited in Mr. Arbane's motion, these include the Second, Third, Seventh, Eighth, and Eleventh Circuits.  See, e.g., United States v. Langella, 804 F.2d 185, 189 (2d Cir. 1986); United States v. Ciancaglini, 858 F.2d 923, 927-29 (3d Cir. 1988); United States v. Marren, 890 F.2d 924, 935 (7th Cir. 1989); United States v. Dean, 647 F.2d 779, 788 (8th Cir. 1981); United States v. Ruggiero, 754 F.2d 927, 932 (11th Cir. 1985).  These tests "acknowledge[] the particular multiplicity concern underlying successive conspiracy charges: 'the ease with which prosecutors can draft indictments that allege what appear to be separate conspiracies but may actually be parts of an overall conspiracy.'"  United States v. Olmeda, 461 F.3d 271, 282-83 (2d Cir. 2006) (quoting United States v. Abbamonte, 759 F.2d 1065, 1068 (2d Cir. 1985)).  The tests evolved in light of the Supreme Court's holding in Braverman v. United States, 317 U.S. 49, 52 (1942), that:

> Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes.  The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

The government's discussion of the factors used by the various circuits demonstrates why the conspiracy count of the present indictment should be dismissed.

    A.    **The Time Periods**

The government does not dispute, nor could it, that the time period of the Southern District of Florida ("SDF") indictment was completely subsumed within the present indictment, and that they both ended on the same day, January 8, 2002, when Mr. Arbane was arrested in Ecuador.

### B. The Places

The government admits that the places where the "activity occurred" are identical with respect to both indictments (GO 10).

### C. The People Charged

Mr. Arbane is the only person actually named in both of the indictments. The government claims that the present indictment alleges that defendant conspired only with the Engineer and Velez before the latter became an informant (GO 11), while the SDF indictment alleged that there were other co-conspirators. The government does not dispute that it will present essentially the identical evidence it presented at the SDF trial about the alleged participants in the conspiracy, and that they are the same.

### D. Overt Acts

There are no overt acts alleged in either indictment. The government claims, however, that the SDF case "focused on a series of recorded telephone conversations between Arbane and Velez" while in the present indictment the "overt acts involve" shipments of cocaine from Ecuador, a meeting with the Engineer, and "recorded conversations between Velez and Arbane after the Engineer was arrested concerning transporting the cocaine from Ecuador to the United States" (GO 11). The government falsely claims that the latter evidence was only introduced pursuant to Rule 404(b) and was "not used as evidence to prove the existence of the conspiracy" in the SDF (GO 11 n.8). In fact, the "recorded telephone conversations" used in the SDF are the same ones as the "recorded conversations . . . after the Engineer was arrested" that the government will use in the present case. In addition, the government fails to mention that in its brief to the Eleventh Circuit the government argued that evidence of the other shipments and of

-3-

the meeting with the Engineer was "inextricably intertwined with the offense conduct and was admissible as intrinsic act evidence." 2005 WL 4815007 at *28. While the Eleventh Circuit held that the evidence was properly introduced only under 404(b), it was nonetheless a major part of the government's case in the SDF to show Mr. Arbane's intent, and, consequently, the existence of the conspiracy.

### E. The Substantive Statutes

The government admits, again as it must, that both conspiracies are charged under 21 U.S.C. § 963, but argues that the different substantive statutes alleged as objects of the conspiracy "focus on different aspects of drug trafficking" (GO 11).[1] The statutes, however, reach a great deal of overlapping conduct. More importantly, though, the statutes share the common element that is crucial in the present case - - knowledge that the cocaine was intended to be imported to the United States.

Notably, the government does not even discuss, much less attempt to distinguish, United States v. Jarvis, 7 F.3d 404 (4th Cir. 1993), and United States v. Singleton, 177 F.Supp. 2d 12 (D. D.C. 2001), two cases which are very similar to the present case. The failure to even mention these two cases reflects the lack of merit in the government's opposition.

In sum, all five factors in the present case point strongly towards dismissal of the conspiracy count of the indictment. Indeed, the government cites no case that would support denying defendant's motion on this issue. Therefore, the conspiracy count of the present indictment should be dismissed.

---

[1] The government refers (GO 1) to the charge in the indictment under 960(b)(1)(G), which involves marijuana, but offers no explanation for it - - nothing that has been provided to Mr. Arbane in discovery indicates any allegation regarding marijuana.

## II. <u>COLLATERAL ESTOPPEL</u>

In its argument about collateral estoppel, the government fundamentally misunderstands the law and the impact of the Eleventh Circuit's decision. The Eleventh Circuit's opinion establishes that there was no conspiracy to import drugs into the United States after the arrest of the Engineer in June 2001, because other than Velez, none of the other conspirators proposed by the government had any knowledge of a plan to import drugs to the United States.

The government claims that the Eleventh Circuit concluded that the "only possible co-conspirator was the Government's confidential informant," and that no "ultimate issue in this case" was decided (GO 2). This represents a fundamental mischaracterization, or misunderstanding, of the Eleventh Circuit's opinion. The Eleventh Circuit emphasized that the crucial element "to which two culpable co-conspirators must have agreed is thus the importation of drugs into the United States," and that "the essential element of the charged conspiracy . . . was importation of narcotics into the United States." 446 F.3d at 1229-30, 1232 n.13. The government proposed three possible co-conspirators, in addition to Velez, to the Eleventh Circuit, all of whom were rejected by that court. The court found there was no evidence "to support an agreement by Lopez-Posada to import drugs into the United States," that the evidence was "clearly insufficient to demonstrate that Luis Castillo Armen was a participant in or had knowledge of any criminal conspiracy," and the "government's evidence was to the contrary" that Rene was a co-conspirator. <u>Id</u>. at 1232-33.

The requirements for collateral estoppel were recently restated by the D.C. Circuit:

> Collateral estoppel requires three elements, each of which is present here: "[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; [2], the issue must have

been actually and necessarily determined by a court of competent jurisdiction in that prior case; [and][3], preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Yamaha Corp. of Amer. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

Martin v. Dept. of Justice, No. 05-5207, slip op. at 11 (D.C. Cir. June 1, 2007).[2] The court further described the doctrine:

> See also RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982) ("[F]or purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."); Yamaha Corp., 961 F.2d at 254 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties." (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982))); McLaughlin v. Bradlee, 803 F.2d 1197, 1201 (D.C. Cir. 1986) ("[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980))).

Id. at 12-13. Further, the Eleventh Circuit, which decided Mr. Arbane's appeal, has recently held that collateral estoppel may bar a retrial after a partial verdict on a count upon which a jury hung where a count upon which the jury acquitted "necessarily determined" an "essential element" of the hung count. United States v. Ohayon, 483 F.3d 1281, 1286 (11th Cir. 2007). The court in Ohayon eschewed a "hyper technical and archaic" approach to collateral estoppel determinations in favor of an analysis of "realism and rationality." Id. (quoting Ashe v. Swenson, 397 U.S. 436, 444 (1970)).

The Eleventh Circuit's opinion in Mr. Arbane's case is very detailed and specific and thus

---

[2] The government makes no claim or assertion that there would be any "basic unfairness" applying collateral estoppel to the present case. In fact, it would be fundamentally unfair to Mr. Arbane to fail to apply it.

there is no need to speculate to determine the basis of its findings. Cf. Ohayon, id. at 1287 (basing decision in Mr. Arbane's appeal on what a "rational jury" would have concluded). The Eleventh Circuit's decision clearly precludes the government from arguing that there was any conspiracy to import drugs into the United States after the arrest of the Engineer in June 2001. Indeed, the government admits as much when it states that "the evidence supports a conspiracy with the Engineer to import cocaine into the United States from September 1999 to the arrest of the Engineer in June 2001" (GO 5). Because the indictment in the present case was not filed until September 21, 2006, well over five years after the conspiracy ended according to the Eleventh Circuit (and the government), the conspiracy count of the indictment must be dismissed as beyond the statute of limitations. Whatever the merits of the government's citation to cases that a conspiracy does not end with an arrest of a co-conspirator (GO 5-7), they are irrelevant - - the Eleventh Circuit has already decided that the conspiracy ended with the arrest of the Engineer, a fact the government refuses to acknowledge.

The government also, paradoxically, claims that the arrest of the Engineer "did not terminate the conspiracy" (GO 5). This argument, however, is not only directly contrary to the Eleventh Circuit's decision, but also is contrary to the government's own assertion, quoted above, that the conspiracy ended with arrest of the Engineer.

In addition, the government repeatedly states that Velez began cooperating with law enforcement on November 19, 2001 (GO 4 & n.1, 5 n.5, 7 n.4, 11). At Mr. Arbane's trial in the SDF, Velez testified that he started to make arrangements to cooperate with the government in the summer of 2001 (5/7/04: 244), and that, as of May 7, 2004, he had been cooperating with the government for approximately three years (5/7/04: 220). He testified that he actually came to the

United States, signed the plea agreements, and had his first interview with prosecutors on October 21, 2001, and that his lawyer had been making the arrangements before that (5/10/04: 326-27).  The Eleventh Circuit held that "[j]ust after the Engineer was arrested, Velez began cooperating with the government as an informant," and described the background:

> In the spring of 2000, Velez and his wife had attempted to buy a false visa from an undercover agent.  Velez left the United States and waited for his wife's legal problems to clear up.  His wife was subsequently arrested, and both he and his wife were charged.  Velez then <u>returned to the United States in the summer of 2001 and became a government informant</u>.

446 F.3d at 1227-28 & n.6 (emphasis added).  The government's reference to November 19, 2001, for which no source is provided, is thus a mystery.[3]

Finally, the second count of the present indictment, charging a substantive violation of § 959, occurring on January 8, 2002, is also barred by collateral estoppel.  Velez testified that Mr. Arbane did not want to do anything, legal or illegal, involving the United States in January 2002, that Mr. Arbane did not want anything to do with the United States, and that there was no agreement to bring drugs to the United States from October 2001 through January 2002 (5/10/04: 353-54, 364, 370, 372).  The Eleventh Circuit specifically relied upon this testimony in its opinion, 446 F.3d at 1227, as well as the fact that Velez testified there was no other conduit for bringing drugs to the United States after the Engineer's arrest.  <u>Id</u>.

Because of the legal and factual determinations made by the Eleventh Circuit in Mr. Arbane's appeal, both counts of the indictment should be dismissed because collateral estoppel precludes the prosecution.

---

[3] The government's Eleventh Circuit brief notes that the jury in the SDF was instructed that Velez became a government agent on October 21, 2001. 2005 WL 4815007 at *20.

### III. VINDICTIVE PROSECUTION

The government's argument is that there is no vindictiveness because § 959 is not a greater crime, but is a different crime (GO 14). This argument simply ignores the fact that in the present indictment the government has doubled the counts, and the potential penalties, by adding the substantive count to the new conspiracy count, in addition to adding a forfeiture count.

Moreover, it is abundantly clear in this case that prosecutors and agents from Washington, D.C., New York, and Florida have been working in concert regarding Mr. Arbane long before his arrest in Houston in 2003, and have continued to do so since then. It is likewise clear that the present increased charges were brought only because of his successful appeal of his conviction, precisely what the Supreme Court's original cases regarding vindictive prosecution forbid. See Blackledge v. Perry, 417 U.S. 21 (1974); North Carolina v. Pearce, 395 U.S. 711 (1965).

The government makes no argument that it has any newly discovered evidence. The indictment was filed just before Mr. Arbane was to be deported (despite the New York indictment). Under the circumstances, the presumption of vindictiveness requires dismissal of the indictment.

## CONCLUSION

Mr. Arbane respectfully requests that, for all the reasons set forth above and in his original motion, that the indictment against him be dismissed.

Respectfully submitted,

"/s/"
A.J. KRAMER
Federal Public Defender
DANIELLE JAHN
Assistant Federal Public Defender
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500
